# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FT. MYERS DIVISION

JAMIE LAVENDER,

                     **Plaintiff,**

-vs-                                                         **Case No.  2:09-cv-383-FtM-DNF**

COMMISSIONER OF SOCIAL
SECURITY,

                     **Defendant.**

_____

## ORDER

Plaintiff, Jamie Lavender on behalf of Charles Lavender seeks judicial review of the final decision of the Commissioner of the Social Security ("Commissioner") denying her father's claim for Social Security Disability Insurance ("SSDI") benefits from his alleged onset date of March 20, 2002 through June 29, 2004. The Commissioner determined that Mr. Lavender was disabled from June 30, 2004 through the date of his death on October 31, 2005, however found no evidence to support the claim that Mr. Lavender was disabled prior to that time. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. The Plaintiff filed a Reply Brief (Doc. 30) which the Court also considered. For the reasons set out herein, the decision is **REVERSED AND REMANDED** pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).  The parties consented to proceed before a United States Magistrate Judge for all proceedings.  (Doc. 18).

## I.  Social Security Act Eligibility, the ALJ Decision, and Standard of Review

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§404.1505, 416.905.  The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy.   42 U.S.C. §§423(d)(2), 1382a(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

On July 29, 2004, the claimant[1] filed an application for a period of disability and disability insurance benefits, alleging an onset date of June 30, 2004. (Tr. p. 15).  On February 3, 2005, on initial determination, the claimant was found to be disabled as of June 30, 2004. (*Id.*).   On April 8, 2005, the claimant filed a Request for Reconsideration agreeing with the decision that he was totally disabled, however contending that he was totally and permanently disabled from March 20, 2002, and that his onset date should be March 20, 2002.  (Tr. p. 65). The claimant filed a request for a hearing on September 15, 2005.  (Tr. p. 60).  A death certificate was filed indicating that the claimant was found dead on October 31, 2005.  (Tr. p. 46). On August 14, 2007, the Plaintiff, Jamie Lavender completed a Notice Regarding Substitution of Party Upon Death of Claimant as the child of Charles Lavender.  (Tr. p. 44). A hearing was held before Administrative Law Judge Victor L. Cruz ("ALJ")

---

[1]  "Claimant" refers to Charles H. Lavender where as "Plaintiff" refers to his daughter Jamie Lavender.

on November 30, 2007.  (Tr. p. 368-395).  The ALJ's Decision dated January 23, 2008, denied Plaintiff's request to amend the onset date to March 20, 2002.  (Tr. p. 15-23).  At Step 1, the ALJ found claimant had not engaged in substantial gainful activity after March 20, 2002, based upon his earnings records and the testimony of Jamie Lavender at the hearing. (Tr. p. 18).  At Step 2, the ALJ found the Plaintiff had not produced sufficient medical evidence to support the existence of a medically determinable impairment from March 20, 2002 to June 30, 2004.  The only medical evidence presented prior to July 8, 2004 was an MRI of the brain dated October 31, 2000.  The ALJ found that the MRI showed "(1) Diffuse hyperintensities within the periventricular and subcortical white matter are non-specific and may represent small vessel ischemic changes.  However, given the linear appearance and pericallosal and callosal location, primary demyelinating process suggest as multiple sclerosis may give rise to this appearance; 2) Probable lacunes in the pons and remote non-enhancing inf[ar]ct in the right cerebellar hemisphere without evidence of supratentorial cortical infarction or mass; and 3) left greater than right mastoid air cell disease." (Tr. p. 18).  The ALJ found that the MRI "'suggests'" a possible demyelinating medical condition, however, no medically determinable impairment that could cause claimant's alleged disabling limitations was established. (*Id*.).  The ALJ found that he was "unable to, and it is not reasonable to, extrapolate the diagnoses of the first medical evidence of record in July 2004 back to March 2002." (Tr. p. 19).  Therefore, the ALJ found that the objective medical evidence in the record did not establish the existence of a medically determinable impairment before June 30, 2004.  (*Id*.).  The ALJ noted that the claimant's self report while at the hospital indicated independent functioning in that he lived alone, drove, and was participating in cards, exercise, sports, music, reading, writing, trips, religious activities, walking/wheeling outdoors, and gardening.  (*Id*.).  The ALJ noted that it was unclear from the record

how long the claimant had experienced multiple infarcts and gradual dementia. (*Id*.). At the hospital,

the claimant indicated that he had a history of five transient ischemic attacks within the prior five years

which the ALJ found could be consistent with the 2000 MRI. (*Id*.). The ALJ determined that the

regulations required him to have evidence from an acceptable medical source to establish whether the

claimant had a medically determinable impairment "which must be shown by medically acceptable

clinical and laboratory diagnostic techniques" citing 20 C.F.R. §404.1508 and 404.1513. (*Id*.).

However, the ALJ found that from June 30, 2004, the Plaintiff suffered from sever medical

impairments of organic mental disorder, dementia, diffuse encephalopathy, history of transient

ischemic attack, and cellulitis of the right hand and left buttock area. (Tr. p. 19). At Step 3, the ALJ

found claimant's impairments did not meet or medically equal one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §404.1520(d) and 416.920(d). (Tr. p. 20). The

ALJ determined that as of June 30, 2004, the claimant had the residual functional capacity to perform

a limited range of sedentary work with an inability to perform self care, significant impairment to

perform activities of daily living, minimal interaction with co-workers due to rage and anger issues

as well as severe depression, no bladder control, and a deteriorating physical and mental condition.

(Tr. p. 20). At Step 4, as of June 30, 2004, the ALJ determined that the claimant was unable to

perform his past relevant work as a sales representative in education courses, food service manager,

cook, food deliverer, and retail store manager. (Tr. p. 21). At Step 5, as of June 30, 2004, the ALJ

determined that the claimant was considered a person of advanced age with a high school education,

there were not a significant number of jobs in the national economy that the claimant could perform.

(Tr. p. 22). The ALJ found that as of June 30, 2004 through the date of the claimant's death on

October 31, 2005, the claimant was disabled under Sections 216(i) and 223(d) of the Social Security Act.  (Tr. p. 22-23).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *Crawford v. Commissioner of Social* Security, 363 F.3d 1155, 1158 (11th Cir. 2004), *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Crawford,* 363 F.3d at 1158,  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. §405(g).  Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Id.* at 1158-9, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Shinn ex rel. Shinn v. Commissioner of Social Security*, 391 F.3d 1276, 1282 (11th Cir. 2004),  Crawford, 363 F.3d at 1158,  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II.  Review of Facts and Conclusions of Law

### A.  Background Facts

The Plaintiff was born on June 24, 1944 and was 57 years old on the amended alleged onset date, and 61 years old when he died on October 31, 2005.  (Tr. p. 15, 21, 46).  Mr. Lavender had a high school education.  (Tr. p. 114).  His past relevant work consisted of a cook, delivery man, business owner, salesman, and taxi driver (Tr. p. 80).

### B.  Medical Evidence

On October 31, 2000, Kevin Carroll, M.D.  performed an MRI of the head of the claimant at the request of Rajan Sareen, M.D. (Tr. p. 153-154).  The following was the impression by Dr. Carroll:

> 1.  Diffuse hyperintensities within the periventricular and subcortical white matter are non-specific and may represent small vessel ischemic changes.  However, given the linear appearance and pericallosal and callosal location, primary demyelinating process suggest as multiple sclerosis may give rise to this imaging appearance.
> 2.  Probable lacunes in the pons and remote non-enhancing inf[ar]ct in the right cerebellar hemisphere without evidence of supratentorial cortical infarction or mass.
> 3.  Left greater than right mastoid air cell disease.

(Tr. p. 153-154).

The next medical records begin on the claimant's admittance to Cape Coral Hospital on July 8, 2004 due to an abrupt onset of weakness and slurred speech.  (Tr. p. 199).  The records note that the claimant was a vague historian.  (Tr. p. 199). The claimant also had cellulitis of the right middle finger.  (Tr. p. 200).  After examination on July 9, 2004, Patrick Mcgookey, M.D. found that the claimant had  "diffuse encephalopathy, at this time multiple infarcts and subcortical dementia is considered as well as undiagnosed demyelinating disease and other etiologies of a leukoencephalopaythy." (Tr. p. 212). Dr. Mcgookey ordered an MRI of the brain, carotid ultrasound, electoencephalogram, and metabolic studies.  (Tr. p. 212).   The claimant had an MRI of the head on

July 10, 2004. (Tr. p. 205). The findings from the MRI were that the claimant had small vessel ischemic changes with extension into the basal ganglia, right thalamus, and pons particularly on the left. (Tr. p. 205). The hospital records show that the claimant provided confusing and contradictory answers to his background and medical history. (Tr. p. 211).

The claimant was released to a nursing home in August 2004. (Tr. p. 173). The claimant received ongoing medical treatment for his mental problems and other health issues. (Tr. p. 173-183, 193-198).

### B. State Agency Evaluations by Non-Examining Physicians

On February 1, 2005, Arthur H. Hamlin, Psy.D. found that the claimant suffered from organic mental disorders and that he met listing 12. 02 A5 B1, 2, 3 (Tr. p. 158). He determined that the claimant had a disturbance in mood, was restricted in activities of daily living, maintaining social functioning, maintaining concentration, and persistence of pace. (Tr. p. 168). Dr. Hamlin concluded that the claimant had compromised judgment and compromised higher order processing, and that he was impulsive and excitable. (Tr. p. 170). Dr. Hamlin found the claimant to be incompetent. (Tr. p. 170). The ALJ did not give great weight to Dr. Hamlin's opinion because he did not specify an onset date. (Tr. p. 20).

On July 21, 2005, Nancy Dinwoodie, M.D. performed a Psychiatric Review Technique. (Tr. p. 138). Dr. Dinwoodie found that the claimant had organic mental disorders that met the listing of 12.02. (Tr. p. 138). Dr. Dinwoodie found the claimant had a disturbance in mood. (Tr. p. 139). Dr. Dinwoodie agreed with Dr. Hamlin that the claimant had marked restrictions in activities of daily living social functioning, and maintaining concentration, persistence, or pace. (Tr. p. 148). Dr. Dinwoodie noted that there are no records at the time of the alleged onset in March 2002. (Tr. p. 150).

Dr. Dinwoodie also noted that the claimant claimed to live alone and drive a taxi but was a poor historian. (Tr. p. 150). Dr. Dinwoodie concluded that the claimant had evidence of cognitive disorder from the earliest records in the file, but found that the earliest onset was July 2004. (Tr. p. 150). The ALJ did not give great weight to Dr. Dinwoodie's opinion because she did not examine the claimant and did not have a treating relationship with him. (Tr. p. 20).

### C.  Testimony as Hearing

The hearing was held on November 30, 2007. (Tr. p. 368-395). At the hearing, counsel for Jamie Lavender stated that the medical records from the doctor who ordered the MRI were not available and the doctor had destroyed them. (Tr. p. 371-372). The ALJ noted that the earning of the claimant was down significantly from 2001 to 2002 with the attorney commenting that the claimant only earned $5600 in 2002. (Tr. p. 373). Jamie Lavender testified that her father began getting sick in 2000 or 2001. (Tr. p. 377). She saw her father having physical and mental incapacity, poor judgment, depression, and a great deal of anxiety. (Tr. p. 377). In 2002, her father drastically changed from a strong and independent person to one that could not perform daily duties and could not make decisions. (Tr. p. 378). In 2002, Jamie Lavender recalled that her father had lost bladder control, his speech was impaired, and he had severe depression and mood swings. (Tr. p. 379). She saw him falling down, lose his appetite and was not able to bathe himself, cook or work. (Tr. p. 379). He drove a taxi until his driver's license was revoked. (Tr. p. 379). The Plaintiff testified that after the claimant stopped working, he lived with a neighbor for a while. (Tr. p. 380). When he started to become a threat to himself, the Plaintiff testified that the claimant would "bounce around" and friends would take care of him or he would stay with his son or his ex-wife. (Tr. p. 383).

The vocational expert testified that the claimant was not able to perform any of his past relevant work and could not perform any job in the local , regional, or the national economy.  (Tr. p. 394).

### D.  Specific Issues

The Plaintiff raises three issues on appeal.  As stated by the Plaintiff they are: 1) The ALJ committed reversible error in failing to comply with Social Security Ruling 83-20 by not calling a medical advisor given the ambiguous evidence of onset; 2) the ALJ committed reversible error in failing to provide specific reasons for rejecting the lay evidence of onset; and 3) the ALJ committed reversible error in failing to set forth specific findings for his credibility findings, as required.

### 1.  Failure to Call a Medical Advisor

The Plaintiff asserts that the ALJ committed reversible error by failing to comply with Social Security Ruling 83-20 by not calling a medical advisor to provide an opinion as to the onset date.  The ALJ found that he was "unable to, and it is not reasonable to, extrapolate the diagnoses of the first medical evidence of record in July 2004 back to March 2002.  Accordingly, the objective medical evidence contained in the record does not establish the existence of a medically determinable impairment before June 30, 2004."  (Tr. p. 19).   The ALJ also found that "the claimant initially alleged an onset date of disability of June 30, 2004.  The redetermination explanation noted that even though the first medical evidence of record is July 8, 2004, it is reasonable to conclude that the condition was disabling one week earlier on June 30, 2004, the claimant's initial alleged onset date.

The undersigned gives the claimant the benefit of any doubt and agrees with the explanation provided in the Notice of Reconsideration, dated July 22, 2005." (Tr. p. 19).

The Plaintiff argues that an MRI of the Plaintiff's head was taken in 2000, and this MRI provides medical evidence which suggests that the onset of claimant's disease was prior to June 30, 2004. The Plaintiff asserts that the ALJ should have contacted a medical advisor to provide an opinion as to the onset date comparing the MRI taken in 2000 with the MRI taken in 2004. The Commissioner argues that the ALJ properly found that the claimant was disabled as of June 30, 2004 because the claimant failed to provide medical evidence showing that he was disabled prior to this time, and it is the burden of the claimant to produce medical evidence to support his claim. The Court recognizes that the Plaintiff bears the burden of providing medical evidence to support the claimant's claim for the onset of his disability. *See*, *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). However, SSR 83-20[2] applies when there is no sufficient medical evidence to determine an onset date.

SSR83-20 provides as follows:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

> If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not

---

[2] The Social Security Administration's rulings are not binding on this court, however, they are accorded great respect and deference. *See, Klawinski v. Commissioner of Social Security*, 2010 WL 3069718, *3 (11th Cir. Aug. 6, 2010).

available, it may be necessary to explore other sources of documentation. Information may be obtained from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition. However, before contacting these people, the claimant's permission must be obtained. The impact of lay evidence on the decision of onset will be limited to the degree it is not contrary to the medical evidence of record. (In mental impairment cases, see SSR 83-15, PPS-96, Titles II and XVI, Evaluation of Chronic Mental Impairments.)

The available medical evidence should be considered in view of the nature of the impairment (i.e., what medical presumptions can reasonably be made about the course of the condition). The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in death. Convincing rationale must be given for the date selected.

SSR 83-20.

In the instant case, the claimant did have medical records, however, the claimant's doctor misplaced, lost, or destroyed these records. There is no dispute that the claimant's impairments were the type of impairments that were slowly progressing. As of July 8, 2004, when the claimant entered the hospital, the ALJ found the claimant was disabled, however, the ALJ found that the claimant's disability did not begin on that date, but rather earlier. This conclusion is evidenced by the ALJ finding an onset date of June 30, 2004, which appears to have been arbitrarily selected as the onset date. *See*, *Hall v. Commissioner of Social Security*, 2008 WL 3200282, *10 (M.D. Fla. Aug. 5, 2008). The ALJ found it "reasonable to conclude that the condition was disabling one week earlier on June 30, 2004, the claimant's initial alleged onset date." (Tr. p. 19). The ALJ failed to cite to any medical evidence showing that the onset date of the claimant's disability was June 30, 2004.

To determine the onset date, the ALJ also appears to have relied on the claimant's self-reporting at the hospital as to his ability to function independently. However, the hospital staff noted in the medical records that the claimant's statements were confusing. Further, the Plaintiff testified at the hearing that the claimant drastically changed in 2002 and was unable to perform his daily functioning.

The ALJ noted that the claimant's attorney argued that the MRI from 2000 was similar to the MRI from 2004, and therefore there is a possibility that the claimant's disabling impairments began prior to 2004. The ALJ found, "[w]hile that might be a possibility, there are no medical records to support that position." (Tr. p. 19). SSR 83-20 applies to the situation where there is no sufficient medical records to determine an onset date based upon the progression of an impairment. The ALJ must look to other sources of documentation including contacting family members to ascertain why there is no medical evidence and to furnish additional evidence regarding a claimant's condition. When an onset date must be inferred due to the lack of medical records and the type of impairments that are slowly progressing impairments, then the ALJ should call a medical advisor to provide an opinion as to when the onset date occurred. Courts have held that a "medical expert should be used 'if the medical record is ambiguous or otherwise inadequate to make a determination of the onset date.'" *Hall v. Commissioner of Social Security*, 2008 WL 3200282 (M.D. Fla. Aug. 5, 2008) (citing *Volley v. Astrue*, 2008 WL 822192 (N.D. Ga., March 24, 2008)). The ALJ did note that the claimant had a small amount of earnings in 2002 "which is consistent with partial year earnings from January 1, 2002 to March 20, 2002, the amended alleged onset date" and found that the claimant had no significant gainful employment after March 20, 2002. (Tr. p. 18).

In the instant case, the claimant had a slowly progressing impairment.  The ALJ should have called a medical advisor to render an opinion as to the onset date of the disability based upon the lack of medical evidence in the record due to the claimant's doctor misplacing, losing, or destroying the medical records.  Accordingly, this case must be remanded to have the Commissioner appoint a medical advisor to render an opinion as to an onset date.

### 2. Lay Evidence as to Onset Date

The Plaintiff argues that the ALJ erred in rejecting the testimony of the Plaintiff at the hearing to support the onset date.  The ALJ considered the Plaintiff's testimony at the hearing noting that the Plaintiff testified that,

> the claimant was becoming sick around 2000, which was the same time claimant and his spouse were divorcing.  He became more and more disoriented and was unable to take care of himself or his business.  She testified that before claimant was placed in a nursing home, he was declining and just sat around and cried.  He was weak and felt dizzy.  He fell frequently and was extremely bruised.  He had progressively worsening anger with outbursts of rage.  He had loss of bladder control and was eventually unable to perform even basic grooming and hygiene.

(Tr. p. 21). The ALJ did not credit this testimony nor the testimony that the claimant had drastically changed in 2002 to determine an earlier onset date.  SSR 83-20 provides that if reasonable inferences about the progression of the impairment are unable to be made based upon the evidence in the record and additional medical evidence is not available, then other information may be obtained from family members to furnish additional information as to the course of the claimant's condition.  Although the ALJ did not specifically find this testimony not to be credible, he did find that based on the lack of any medical evidence that the claimant was not disabled prior to June 30, 2004.  However, if a medical advisor provides an opinion that the claimant was disabled prior to June 30, 2004, then the Court will

-13-

require the ALJ to reconsider the Plaintiff's testimony in conjunction with the opinion of the medical advisor.

### 3.  Specific Findings of Credibility

The Plaintiff argues that the ALJ erred in not finding the Plaintiff's testimony not entirely credible.  The Plaintiff uses the Eleventh Circuit pain standard citing to *Holt v. Sullivan*, 921 F.2d 1221, 1221 (11ᵗʰ Cir. 1991).  As with the above issue, the ALJ did not find that the Plaintiff's testimony was not credible, rather he found that it was not sufficient to overcome the lack of medical evidence to support an earlier onset date.  The Court will remand this case and require the ALJ to review the Plaintiff's testimony if the medical advisor provides an opinion that the onset date was earlier than June 30, 2004.

### III.  Conclusion

While remanding this case for further consideration, this Court expresses no views as to what the outcome of the proceedings should be.  At the reopened proceeding, each party shall have the opportunity to submit additional evidence.

### IT IS HEREBY ORDERED:

1.  The decision of the Commissioner is **REVERSED** and this case is **REMANDED** for further administrative proceedings.  The ALJ shall appoint a medical advisor to provide an opinion as to the claimant's onset date.  The ALJ shall then consider this opinion with the testimony of the Plaintiff from the hearing held on November 30, 2007, and any other evidence presented.

2.  The Clerk of Court shall enter final judgment in favor of the Plaintiff pursuant to 42 U.S.C. §405(g) as this is a "sentence four remand" and close the file.  The final judgment shall state that if

Plaintiff ultimately prevails in this case upon remand to the Social Security Administration, any motion for attorney's fees under 42 U.S.C. §404(b) must be filed within fourteen (14) days of the Commissioner's final decision to award benefits.

**DONE** and **ORDERED** in Chambers in Ft. Myers, Florida this ___30th___ day of September, 2010.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record